IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

**MAURICE DOSSO,**

        Plaintiff,

v.                                        CIVIL ACTION NO. 3:19-CV-68
                                            (GROH)

**ALEX M. AZAR, II, Secretary of Health
and Human Services of the United
States of America, and SHENANDOAH
COMMUNITY HEALTH CENTER,**

        Defendants.

**AMENDED REPORT AND RECOMMENDATION**

**I.  INTRODUCTION**

Pending before the Court is Plaintiff Maurice Dosso's ("Plaintiff") pro se Motion [ECF No. 2] for Leave to Proceed In Forma Pauperis.[1] Because Plaintiff seeks to proceed *in forma pauperis*, the undersigned must conduct a preliminary review to determine whether Plaintiff's pro se Complaint [ECF No. 1] sets forth any viable claims. See 28 U.S.C. § 1915(e)(2)(B).

**II.  FACTUAL AND PROCEDURAL BACKGROUND**

**A. The Complaint**

On May 1, 2019, Plaintiff filed a complaint alleging a claim for medical malpractice under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346, against Defendants Alex M. Azar, II, Secretary of Health and Human Services of the United States of America

---

[1] This motion was referred to the undersigned by order dated May 3, 2019. Order of Referral, ECF No. 4.

("HHS"), and Shenandoah Community Health Center ("SCH") (collectively, "Defendants").[2] ECF No. 1, at 2. Since about 2012, Plaintiff was a patient at SCH where he was being treated, followed, and monitored mostly for high blood pressure. Id. at 5. On or about September 22, 2015, during a routine visit to SCH, Plaintiff's treating physician referred Plaintiff to a specialist for a "total life-altering and potentially life-threatening" medical condition that Plaintiff had developed.[3] Id. Plaintiff claims that his medical records demonstrate that Plaintiff's lab results show evidence of "high and abnormal creatinine levels" for more than two years before he was referred to a kidney specialist in September 2015. ECF No. 12, at 4–5. Plaintiff alleges that his records show "visibly and distinguishably marked in red, abnormal and progressively rising creatinine levels, over a course of more than two years during which Defendants said nothing and took no action until Plaintiff developed a kidney disease." Id. at 5. Plaintiff alleges that this kidney disease was preventable, but is now irreversible. Id.

Plaintiff claims that this failure to inform Plaintiff of his abnormal creatinine levels for more than two years was a breach of the duty of care owed by Defendants to Plaintiff. ECF No. 1, at 7; ECF No. 12, at 4. Indeed, Plaintiff claims that "the specific purpose of the routine and regular blood tests" was to monitor his creatinine levels and notify Plaintiff regarding abnormal results to prevent the development of kidney disease. Id. Plaintiff further alleges that Defendants knew or should have known that the medical staff at SCH

---

[2] Plaintiff specifically lists negligence and professional malpractice in his complaint. ECF No. 1, at 2. He also asserts two "Causes of Action" titled: (1) Negligence and (2) Vicarious Liability, Respondeat Superior, Ostensible Agency and/or Agency. Id. at 7, 9. The FTCA imposes a form of vicarious liability on the United States for certain torts committed by employees of the United States acting within the scope of their employment, so it is reasonable to construe Plaintiff's claim simply as a medical malpractice claim under the FTCA.
[3] While Plaintiff's complaint is vague as to the nature of his abnormal bloodwork and disease, his objections to the first Report & Recommendation ("first R&R") [ECF No. 7] provide more factual details regarding Plaintiff's allegation and will be included in this factual background section.

were not properly trained and/or supervised and that Defendants negligently hired incompetent, inexperienced and/or unqualified operators, administrators, employees, agents, and staff. ECF No. 1, at 8. Plaintiff claims that he now suffers "tremendous trauma, emotional distress and mental anguish, loss of enjoyment of life and loss of economic, financial and other opportunities" and that "he has suffered the ability to live a normal life like most people." Id. at 7, 9. On this basis, Plaintiff seeks monetary compensation for his medical expenses, economic and financial losses, pain and suffering, emotional distress and mental anguish, future impairment, and loss of enjoyment of life, permanent and demanding special lifestyle changes and requirements, future and lifetime medical needs, costs and attorneys' fees, and any other relief that the Court deems proper. Id. at 11.

### B. Procedural History

Prior to filing suit, Plaintiff sent a "Notice of Intent to Sue"[4] to SCH laying out the medical malpractice grounds for the lawsuit and the theories of liability. ECF No. 12, at 7. Plaintiff alleges that SCH never responded to his Notice. Id. at 9. Therefore, Plaintiff followed up on his Notice by contacting and speaking with Mr. David Fant, CEO of SCH, on the telephone for twenty minutes on September 12, 2017, regarding his medical malpractice claims. Id. On that same day, Plaintiff also initiated his administrative remedies under the FTCA by filing an FTCA claim with the United States Department of Health and Human Services. Id.

By letter dated February 6, 2018, HHS sent its denial of Plaintiff's claim at the initial

---

[4] Plaintiff also calls this document "Letter of Intent to Sue." ECF No. 12, at 3, 9. Because Plaintiff has not filed this document, the undersigned will liberally construe Plaintiff's allegations regarding this document as true.

3

review level to Plaintiff. ECF No. 12-3. The letter specifically stated that if Plaintiff disagreed with HHS's determination, Plaintiff could file a request for reconsideration with the Agency or Plaintiff could file suit against the United States within six (6) months from the date of the letter. Id. at 1–2. By letter dated November 6, 2018, HHS denied as untimely Plaintiff's request for reconsideration because Plaintiff requested reconsideration on August 20, 2018, more than six months after February 6, 2018. ECF No. 12-4, at 2. On May 1, 2019, Plaintiff filed the instant lawsuit. ECF No. 1.

### III. LEGAL STANDARD

When filing a lawsuit in federal court, the plaintiff is required to pay certain filing fees. The court has the authority to allow a case to proceed without the prepayment of fees "by a person who affirms by affidavit that he or she is unable to pay costs . . . ." L.R. Gen. P. 3.01. The plaintiff files this affidavit along with his request or motion for leave to proceed *in forma pauperis*. Id. The Supreme Court of the United States has explained that the purpose of the "federal *in forma pauperis* statute . . . is designed to ensure that indigent litigants have meaningful access to the federal courts." Neitzke v. Williams, 490 U.S. 319, 324 (1989).

When a plaintiff seeks to proceed *in forma pauperis*, the court conducts a preliminary review of the lawsuit before allowing the case to proceed. See 28 U.S.C. § 1915(e). This includes cases filed by non-prisoners. See Michau v. Charleston Cnty., S.C., 434 F.3d 725, 727 (4th Cir. 2006) (holding that the district court did not abuse its discretion when it dismissed the non-prisoner complaints under 28 U.S.C. § 1915(e)(2)(B)). The court must dismiss a case at any time if the court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted,

or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2)(B). A case is often dismissed *sua sponte* (i.e., on the court's own decision) before the defendant is notified of the case "so as to spare prospective defendants the inconvenience and expense of answering such complaints." Neitzke, 490 U.S. at 324. When reviewing pro se complaints, the Court must construe them liberally. See Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

The federal *in forma pauperis* statute allows a court to *sua sponte* dismiss a complaint that "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Although a complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555 (citations omitted). To survive dismissal for failure to state a claim, the complaint must raise a right to relief that is more than speculative. Id. In other words, the complaint must contain allegations that are "plausible" on their face, rather than merely "conceivable." Id. at 555, 570. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002)). A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.; see also Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009).

## IV. DISCUSSION

The FTCA is a comprehensive legislative scheme by which the United States has waived its sovereign immunity to allow the filing of a civil suit for actions arising out of the negligent acts of agents of the United States. It provides a judicial remedy to those who suffer injury or damages as a result of the negligence of employees of the federal agencies of the United States Government. The FTCA permits recovery on claims for money damages for:

> personal injury or death caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment, under circumstance where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b); see id. §§ 1291, 2671–2680; Bellomy v. United States, 888 F. Supp. 760 (S. D. W. Va. 1995).[5] However, the FTCA does not create a new cause of action.

---

[5] The FTCA contains timeliness requirements regarding a claimant's exhaustion of his administrative remedies, including: (1) presentment of the claim to the appropriate agency within two years from the date the claim arose, and (2) if the agency denies the claim, filing a request for reconsideration with the agency OR suit in the district court within six months of the agency's denial. See 28 U.S.C. § 2401(b); 28 C.F.R. § 14.9(b). In the past, courts have treated a claimant's failure to file either a lawsuit or a request for reconsideration within the six-month timeframe as reason for dismissing the lawsuit for lack of subject-matter jurisdiction. See Little v. United States, No. WMN-12-2173, 2013 WL 105310, at *1–2 (D. Md. Jan. 8, 2013) (dismissing FTCA complaint for lack of subject-matter jurisdiction because the plaintiff's request for reconsideration was untimely filed with the agency); McClain v. United States, No. 5:05CV49-H, 2005 WL 2148929, at *2–3 (dismissing FTCA complaint for lack of subject-matter jurisdiction because the plaintiff's request for reconsideration was untimely filed with the agency). However, in United States v. Kwai Fun Wong, 135 S.Ct. 1625, 1627 (2015), the Supreme Court held that the FTCA's time limitations are non-jurisdictional and are subject to equitable tolling. Because timeliness is non-jurisdictional, the undersigned does not recommend dismissal of the complaint on untimeliness grounds at this stage in the proceedings.

Edina v. United States, 259 F.3d 220, 223 (4th Cir. 2001). "The statute permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred." Id. (citing 28 U.S.C. § 1346(b)).

Because Plaintiff's claim arose out of treatment he received in West Virginia, under West Virginia law, Plaintiff must prove that:

> (1) the health care provider failed to exercise that degree of care, skill, and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances; and (2) such failure was a proximate cause of the injury or death.

W. Va. Code § 55-7B-3(a). When a medical malpractice claim involves an assessment of whether or not the plaintiff was properly diagnosed and treated and/or whether the health care provider was the proximate cause of the plaintiff's injuries, expert testimony is required. Banfi v. Am. Hosp. for Rehab., 529 S.E.2d 600, 605–606 (W.Va. 2000); see Lancaster v. USP Hazelton, No. 3:16CV30, 2017 WL 3448187, at *3 (N. D. W. Va. Aug. 11, 2017) (Groh, Chief J.) ("[T]he general rule is that negligence can be proved only by expert witnesses in medical malpractice cases."). Because expert testimony is usually required in medical malpractice cases, a notice of claim and screening certificate of merit is generally required to be served on each healthcare provider named in the action prior to filing suit. Id.; W. Va. Code § 55-7B-6(b). The only situation in which a screening certificate of merit is not required is where it is futile because the "action is based upon a well-established legal theory of liability which does not require expert testimony supporting a breach of the applicable standard of care." W. Va. Code § 55-7B-6(c); see Lancaster, 2017 WL 3448187, at *3.

"Failure to serve a screening certificate of merit in accordance with § 55-7B-6, in most circumstances, calls for dismissal." Id. at *4. "However, there are limited instances in which a plaintiff may be given the chance to rectify his noncompliance—particularly where the plaintiff is *pro se* and has demonstrated a 'good faith effort' to follow § 55-7B-6's instructions." Id. A good faith effort to follow § 55-7B-6 usually will involve the plaintiff serving or filing some document in lieu of the screening certificate of merit, indicating that the plaintiff believed that his claim does not require expert testimony under the § 55-7B-6(c) exception. See Giambalvo v. United States, No. 1:11CV14, 2012 WL 984277, *5 (N. D. W. Va. Mar. 22, 2012) (finding good faith effort where pro se plaintiff filed a document labeled "In Lieu of Medical Screening Certificate" and believed that his claim did not require an expert opinion under subsection (c) exception).

For example, in Westmoreland v. Vaidya, 664 S.E.2d 90 (W. Va. 2008), the plaintiff was acting pro se and had served a handwritten "Notice of intent to bring suit" on the defendants prior to filing suit. Id. at 92. The plaintiff's Notice

> stated that he was providing notice "in lieu of [a] Certificate of Merit due to the fact that the common person would not need to have an expert verify the breech [sic] of [the] standard of care[.]" The filing went on to state that "[a]ll urologists refused to sign the certificate of merit for social reasons making it impossible to use legal counsel[.]" Further, "I understand that this notification meets the criteria in W. V[a.] Code § 55-7B-6(c)[.]"

Id. at 93 (footnote omitted[6]). Because the pro se plaintiff indicated a good faith, albeit erroneous, reliance on the exception to the certificate of merit requirement and was not

---

[6] In the omitted footnote, the Westmoreland Court noted that the plaintiff revealed at oral argument on the parties' motions that two urologists were willing to sign a certificate of merit, but that their fees were cost prohibitive.

8

afforded an opportunity to correct his mistake, dismissal was "too draconian of a result."

Id. at 97. Accordingly, the Westmoreland Court concluded that

> at the time that the trial court determined that subsection (c) of W. Va. Code § 55-7B-6 did not apply and that a certificate of merit was needed, [the plaintiff] should have been allowed time to secure a certificate of merit executed by an expert. The circuit court's dismissal of the case without affording time to secure a certificate of merit was in error.

Id. (footnote omitted[7]).

Notably, the Westmoreland Court did not rule that the pro se plaintiff was allowed to proceed without a certificate of merit. On the contrary, the Westmoreland Court held that once the trial court has determined that expert testimony is required and the plaintiff has therefore erroneously relied on § 55-7B-6(c), the plaintiff is to be afforded a reasonable period of time to obtain a certificate of merit. See id.; Giambalvo, 2012 WL 984277, at *6 ("Westmoreland concluded that the plaintiff's failure to file a certificate of merit was a procedural error, and that he should be afforded a reasonable amount of time to fulfill the statutory pre-suit requirements prior to dismissal of his case.")

Based on Plaintiff's arguments in his objections to the first R&R, Plaintiff believes that expert testimony is not required in his case. Plaintiff avers that because his creatinine levels appeared elevated because they were in red in his medical records, it is common sense that failure to mention this to Plaintiff or refer Plaintiff to a kidney specialist for two years is a breach of a physician's duty of care to his patient. ECF No. 12, at 5, 6. However, the evaluation of Plaintiff's claims will clearly require "an assessment of whether or not

---

[7] In a footnote, the Westmoreland Court noted that "it is the unique case that will qualify for good faith reliance on W. Va. Code § 55-7B-6(c). An ignorance of the mandates or a failure to comply, without more, will not suffice to provide litigants a second chance to provide a certificate of merit." Westmoreland, 664 S.E.2d at 97 n.14.

[P]laintiff was properly diagnosed and treated," and as such, expert testimony will be required. Lancaster, 2017 WL 3448187, at *4; see Giambalvo, 2012 WL 984277, at *4 (finding that how a physician bandaged the plaintiff's toe, which allegedly caused circulatory problems, necrosis, MRSA, and osteomyelitis, would undoubtedly require expert testimony); O'Neil v. United States, No. 5:07CV358, 2008 WL 906470, at *5 (S. D. W. Va. Mar. 31, 2009) (finding that the diagnosis of Graves disease, hyperthyroidism, congestive heart failure, and cardiomyopathy are not within the understand of lay jurors by resort to common knowledge and experience). Therefore, a screening certificate of merit is required in Plaintiff's case.

Although Plaintiff failed to assert his reliance on the § 55-7B-6(c) exception prior to his objections to the first R&R, Plaintiff's arguments in his objections to the first R&R indicate that he appears to have made a good faith effort to comply with the § 55-7B-6 procedural requirements in bringing his FTCA claim. Accordingly, he should be afforded a reasonable amount of time to obtain and file a screening certificate of merit.[8] While the Westmoreland Court noted that thirty days has been considered to be a reasonable

---

[8] Relying on Hinchman v. Gillette, 618 S.E.2d 387 (W. Va. 2005), Plaintiff claims that Defendants have waived any right to demand a certificate of merit because they did not respond to his Notice of Intent to Sue. ECF No. 12, at 11–13. In Hinchman, the West Virginia Supreme Court of Appeals held that when a when a healthcare provider receives a pre-suit notice of claim and screening certificate of merit that the healthcare provider believes to be legally defective or insufficient, the healthcare provider may reply within thirty days of the receipt of the notice and certificate with a written request to the claimant for a more definite statement of the notice of claim and screening certificate of merit. Hinchman, 618 S.E.2d at 395. Further, the Supreme Court of Appeals held that the making of a request for a more definite statement in response to a notice of claim and screening certificate of merit preserves a party's objections to the legal sufficiency of the notice and certificate as to all matters specifically set forth in the request, and all objections to the notice or certificate's legal sufficiency not specifically set forth in the request are waived. Id. Plaintiff's reliance on Hinchman is misplaced, however, because SCH has never been presented with a screening certificate of merit in Plaintiff's case. Having never been presented with a screening certificate of merit, SCH has had nothing to evaluate and has not had reason to provide Plaintiff with a written request for a more definite statement as contemplated in Hinchman. Furthermore, acceptance of Plaintiff's argument here would essentially allow a claimant to wholly circumvent the certificate of merit requirement by simply arguing in court that one was not required to be provided to the healthcare provider. Accordingly, the undersigned concludes that the appropriate solution is provide Plaintiff a reasonable amount of time to obtain and file a screening certificate of merit before allowing the instant case to proceed.

amount of time, Westmoreland, 664 S.E.2d at 97, this Court has previously afforded a similarly-situated pro se plaintiff ninety days to obtain and file a screening certificate of merit. Giambalvo, 2012 WL 984277, at *6. Accordingly, Plaintiff should be afforded ninety (90) days to obtain and file a screening certificate of merit.

## V.    RECOMMENDATION

For the foregoing reasons, I **RECOMMEND** that Plaintiff be afforded **NINETY (90) DAYS** to file a screening certificate of merit as required by W. Va. Code § 55-7B-6.

If Plaintiff **FAILS** to file the screening certificate of merit within ninety (90) days, the undersigned **RECOMMENDS** that Plaintiff's Complaint [ECF No. 1] be **DISMISSED WITHOUT PREJUDICE** and Plaintiff's Motion [ECF No. 2] for Leave to Proceed In Forma Pauperis be **DENIED AS MOOT**.

Plaintiff, Maurice Dosso, shall have fourteen (14) days from the date of filing this Report and Recommendation within which to file with the Clerk of this Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection**. A copy of such objections should also be submitted to the Honorable Gina M. Groh, Chief United States District Judge.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals**. See 28 U.S.C. § 636(b)(1); Wright v. Collins, 766 F.2d 841, 845–48 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); see also Thomas v. Arn, 474 U.S. 140, 155 (1985).

The Court directs the Clerk of the Court to mail a copy of this Report and Recommendation to the pro se Plaintiff by certified mail, return receipt requested, to his last known address as reflected on the docket sheet.

Further, because this Report and Recommendation completes the referral from the District Court, the Clerk is directed to terminate the Magistrate Judge association with this case.

Respectfully submitted this 18th day of June, 2019.

ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE